UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID SCHAEFER, JOSEPH LUTSCH, and JASON LUTSCH, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 18 C 8236<br>)<br>) Judge Sara L. Ellis |
| MICHAEL GRAF, also known as MICHAEL GRAF JR., | )<br>)<br>) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiffs David Schaefer, Joseph Lutsch, and Jason Lutsch lost $84,129.62 that they invested in CryptoCoin Associates I LLC ("CryptoCoin"). As a result, they filed this lawsuit against CryptoCoin, Byron Graf (managing member of CryptoCoin), and Michael Graf (Byron's father) alleging breach of contract, constructive fraud, conversion, and securities fraud. On January 14, 2020, pursuant to settlement, the Court dismissed Plaintiffs' claims against CryptoCoin and Byron, leaving Michael as the only remaining Defendant.[1] After the close of discovery, Michael, proceeding *pro se*, moved for summary judgment. Because Michael fails to show that Plaintiffs' CryptoCoin investments are not subject to the federal securities laws, the Court denies his motion for summary judgment.

---

[1] Dakota Murtaugh joined Plaintiffs in this suit but voluntarily dismissed her claims against Michael on July 27, 2020.

## BACKGROUND[2]

Plaintiffs are former members of CryptoCoin. CryptoCoin was an Illinois limited liability company ("LLC") organized on October 11, 2017 by Byron for the purpose of investing in cryptocurrency.[3] From October to December 2017, Plaintiffs contributed a total of $84,129.62 to CryptoCoin. Through the CryptoCoin Operating Agreement (the "Agreement"), Plaintiffs agreed to contribute money for Byron to invest in cryptocurrency. Michael testified that he assisted Byron, as his son, in formalizing CryptoCoin but that he does not remember whether he received compensation for the services. Byron attests that he asked Michael to "advise [him] in the formation and operation of a proper business relationship with those asking for [his] help in investing in cryptocurrencies." Doc 92-1 at 39. However, Byron attests that he has not "employed, hired, or otherwise engaged Michael Graf Jr. in a contract" regarding CryptoCoin; paid consideration to Michael in connection with CryptoCoin; or granted Michael an interest in CryptoCoin. *Id.*

By signing the Agreement, each Plaintiff gave Byron the exclusive authority to invest their funds in cryptocurrencies and acknowledged that "he may lose a substantial portion of his investment or may make more than his investment as a result in part of risk in investment in cryptocurrencies." Doc. 94-5 at 13. The Agreement explained that CryptoCoin would distribute any profits among its members in proportion to their capital contributions. For example, if each member contributed equal amounts, each member would receive an equal amount of the profits;

---

[2] The Court derives the facts set forth in this section from the statements of fact submitted by the parties to the extent they comport with this Court's summary judgment procedures. The Court takes these facts in the light most favorable to Plaintiffs, the non-movants. The Court has considered the parties' statements of fact and supporting exhibits and included in this background section only those portions which are appropriately supported and relevant to resolution of the pending motion for summary judgment.

[3] The Illinois Secretary of State involuntarily dissolved CryptoCoin on April 12, 2019.

but if one member contributed 50% of the total CryptoCoin capital, he would receive 50% of the profits gained. The Agreement also stated that Byron would receive a share of the profits as consideration for his services, but the Agreement did not define that share. The Agreement listed the address of CryptoCoin's principal office as 1202N 75th St #195, Downers Grove, Illinois 60516. Michael testified that this address is a postal box he rents in his name and which he allowed Byron to use for CryptoCoin purposes.

On November 30, 2017, Michael emailed Joseph and David, informing them that he was Byron's father and was "assisting [Byron] in his efforts with CryptoCoin." Doc. 94-1 at 6; Doc. 94-9 at 5. Michael said he was working to set up folders for Joseph and David "on our secure website and portal" and instructed them how to "establish [their] private account[s]" on the portal. *Id.* Once they had created an account, Michael said he would then "upload a few docs and further work on admin stuff." *Id.* Michael also assured Joseph and David that the account would be "in a secure environment" and accessible only to himself, Byron, and "one other [Certified Public Accountant ("CPA")] of the firm." *Id.* Michael concluded by saying, "Byron will be posting updates to your folder too as we progress." *Id.* The signature at the bottom of the email indicated that Michael was a CPA affiliated with Halloran and Reilly LLC ("H&R"). Jason invested $10,000 in CryptoCoin on December 4, 2017. Joseph invested $10,000 on December 7 and attests that he would not have done so or kept his remaining $20,000 invested with CryptoCoin if he had not received the November 30 email from Michael. David also attests that he would not have kept his roughly $44,000 invested with CryptoCoin if he had not received this email from Michael.

H&R is a consulting firm that performs accounting and other services for various clients. Michael has been affiliated with H&R since 2010 and has served as the manager of the firm

since 2018 when it transitioned to a manager-managed LLC. In his role as manager, Michael handles administrative tasks including entering into contracts on behalf of the firm and updating the firm's website. Michael testified that he had no role in updating Plaintiffs' portals on the H&R website with information regarding their investments, he gave Byron access to Plaintiffs' portals, and he "never did any accounting" for Plaintiffs. Doc. 95-5 at 8. A change log from the H&R website indicates that Michael uploaded and downloaded documents from Joseph's portal on December 9 and 10, 2017. From December 7, 2017 through July 10, 2018, Plaintiffs' portals on the H&R website portrayed information regarding the purported positive performance of Plaintiffs' CryptoCoin investments. As of July 10, 2018, the H&R website indicated that David's investment was up 88.25%, Jason's was up 6.2%, and Joseph's was up 77%. Joseph and David attest that if they had known this information was false at the time, they would have "immediately demanded a return" of their money. Doc. 94-1 at 3; Doc. 94-9 at 2.

In June 2018, Byron emailed Michael asking him to create a document "for when an investor wants to pull his money out." Doc. 95-5 at 33. Michael agreed to create the document. Michael testified that this sort of interaction was a "great example" of the assistance he provided Byron as his father and acknowledged that he understood this document related to CryptoCoin. *Id.* On August 15, Jason requested to withdraw his CryptoCoin capital through a withdrawal request form. On August 13 and August 20, Byron paid Michael a total of $175 between two transactions ($150 and $25 respectively). Michael testified that $175 is a customary charge for accounting services but that he could not recall the purpose of these specific payments from Byron. Around this same time, Byron became less responsive and Joseph began to think "something [was] up." Doc. 94-9 at 32. On October 2, Joseph asked Byron to withdraw his CryptoCoin capital. On October 9, Byron told David that he had "lost" all of Plaintiffs' money.

4

Doc. 94-1 at 3.  Joseph and David attest that they had not received any payment or return of their funds from Byron, Michael, or CryptoCoin prior to filing this lawsuit.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record.  Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992).  The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018).  In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial.  Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014).  The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013).

## ANALYSIS

Plaintiffs bring four claims against Michael: (1) constructive fraud; (2) conversion; (3) securities fraud under § 17(a) of the Securities Exchange Act of 1933 (the "Securities Act"), codified at 15 U.S.C. § 77q; and (4) securities fraud under § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), codified at 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17

C.F.R. § 240.10b-5.  The grounds for Michael's motion for summary judgment are not entirely clear given his *pro se* status, but the Court has done its best to address the issues he raised. Michael purports to move for summary judgment on all claims, but he bases his motion on the Private Securities Litigation Reform Act ("PSLRA") which only applies to the securities claims. *See* 15 U.S.C. § 78u–4(b)(1) (limiting its applicability to "any private action arising under this chapter"); *Cyan, Inc. v. Beaver Cnty. Employees Ret. Fund*, 138 S. Ct. 1061, 1066–67 (2018) (noting the PSLRA applies only to actions brought under the Securities and/or Exchange Act(s)).

Further, Michael's motion primarily relies on the pleading requirements within the PSLRA and the Federal Rules of Civil Procedure, arguing that Plaintiffs have failed to state a claim upon which relief can be granted.  However, Michael filed an answer to the Plaintiffs' complaint and therefore, objections to the sufficiency of the complaint are not appropriate at this time.  *See* Fed. R. Civ. P. 12(b)(6) (requiring a motion asserting the defense of failure to state a claim to "be made before pleading"); *Costello v. Grundon*, 651 F.3d 614, 636 (7th Cir. 2011) (noting "the PSLRA pleading standard is not the same as the summary judgment standard" and that "the test at each stage [pleading, summary judgment, and judgment as a matter of law] is measured against a different backdrop" (citations omitted) (alteration in original)).  Moreover, Michael's arguments are conclusory, failing to point to any specific fact or claim Plaintiffs cannot prove.  *See Lundy v. Westwood Heights Apartments, LLC*, 711 F. App'x 356, 357 (7th Cir. 2018) ("We construe pro se filings liberally, but undeveloped or unsupported contentions are waived."); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) ("Although we must liberally construe Defendant's pro se petition, we are not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments." (citation omitted)).  Therefore, the Court will focus on Michael's two

supported arguments that could entitle him to summary judgment and are therefore appropriate at this stage: whether the Agreement is a security and whether any exemptions to the federal securities laws apply.

I.       **The Agreement as an Investment Contract**

Michael appears to argue that the Agreement is not a security subject to federal securities laws. Plaintiffs argue that the Agreement constitutes an investment contract and is therefore a security subject to federal securities laws. Plaintiffs bring fraud claims relating to the offer, purchase, and/or sale of a security under both the Securities Act and the Exchange Act. Both Acts include "participation in any investment contract" within the definition of a "security" but neither Act defines the term "investment contract." 15 U.S.C. §§ 77b(a)(1), 78c(a)(10). The Supreme Court defined the term as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946). In other words, an investment contract is "(1) an investment of money, (2) in a common enterprise, (3) with the expectation of profits produced solely by the efforts of others." *Stenger v. R.H. Love Galleries, Inc.*, 741 F.2d 144, 146 (7th Cir. 1984).

Plaintiffs have put forth sufficient evidence for a reasonable jury to find that the Agreement qualifies as an investment contract. First, Plaintiffs adequately present through affidavits and documents that each Plaintiff signed the Agreement and invested capital in CryptoCoin. The Agreement specifically stated that Plaintiffs' capital contributions were investments. *Contra Glazer v. Abercrombie & Kent, Inc.*, No. 07 C 2284, 2009 WL 3060269, at *6 (N.D. Ill. Sept. 22, 2009) (finding club membership did not constitute an investment contract where the agreement specifically stated the membership fee was not an investment). Second,

Plaintiffs have sufficiently shown CryptoCoin was a common enterprise. The Seventh Circuit follows a "'horizontal' test of common enterprise, under which multiple investors must pool their investments and receive pro rata profits." *Stenger*, 741 F.2d at 146. That is what the Agreement describes—the members' capital contributions would become CryptoCoin's capital and CryptoCoin would divide any profits realized among the members in proportion to their capital contributions. Although the Agreement notes that each member would have an individual capital account to contribute to, the Agreement clearly purports to pool these funds for investment and provide *pro rata* profits in return. *See S.E.C. v. Koester*, 13 F. Supp. 3d 928, 933 (S.D. Ind. 2014) (finding evidence sufficient to establish that "investors expected to share in the trading profits on a *pro rata* basis" where document received in connection with the investments set forth such an arrangement).

Last, by signing the Agreement and contributing to CryptoCoin, a reasonable jury could find that Plaintiffs expected to receive profits solely through Byron's efforts. The Agreement gave Byron, as CryptoCoin's managing member, sole authority to invest Plaintiffs' money. Plaintiffs also attest that they did not provide input into CryptoCoin's investments. This is sufficient to show Plaintiffs were passive investors in the scheme. *See Cogniplex, Inc. v. Ross*, No. 00 C 7463, 2001 WL 436210, at *10 (N.D. Ill. Apr. 27, 2001) (finding allegations sufficient to suggest an investment contract where one member of the LLC controlled the business and the remaining members were passive investors). The Agreement also clearly contemplated profits, specifically noting the potential high risk and reward involved in cryptocurrency investments and explaining how members would share any such losses or profits. *See S.E.C. v. Edwards*, 540 U.S. 389, 395–96 (2004) (including "participation in earnings resulting from use of investors' funds" as example of an expected profit (citation omitted)). Therefore, Plaintiffs have

sufficiently established that a jury could find that the Agreement was an investment contract subject to the federal securities laws.

## II. Securities Act Exemptions

Michael also argues that the Agreement is exempt from the federal securities laws for a variety of reasons. First, he asserts that the Agreement is exempt under 15 U.S.C. § 77c(a)(11). However, the Securities Act anti-fraud provision at issue here explicitly states that the exemptions within 15 U.S.C. § 77c do not apply to it and courts have held that these exemptions do not apply to the Exchange Act anti-fraud provisions either. *See* 15 U.S.C. § 77q(c); *Spatz v. Borenstein*, 513 F. Supp. 571, 577 (N.D. Ill. 1981) (finding Securities Act exemptions do not apply to either anti-fraud provision); *Leoni v. Rogers*, 719 F. Supp. 555, 564 (E.D. Mich. 1989) (finding the exemptions within 15 U.S.C. § 77c do not apply to the anti-fraud provisions of the Securities Act). Therefore, this exemption is inapplicable here.

Second, Michael argues that the transaction that formed CryptoCoin was not a public offering and is therefore exempt from the Securities Act, citing 15 U.S.C. § 77d(a)(2). However, by its express terms, 15 U.S.C. § 77d(a) applies only to the provisions of 15 U.S.C. § 77e. Because Plaintiffs do not bring claims against Michael under 15 U.S.C. § 77e, the exemptions within 15 U.S.C. § 77d(a) do not apply here. *See Newman v. Weinstein*, 229 F. Supp. 440, 442 (S.D. Ill. 1964) (finding that exempted transaction provisions within 15 U.S.C. § 77d do not apply to the anti-fraud provision). Last, Michael argues that he was not an "issuer" within the meaning of the Securities Act. However, the Securities Act provision Michael allegedly violated does not use the term "issuer" and therefore, this argument is also irrelevant. *See* 15 U.S.C. § 77q(a). Thus, Michael has failed to show that the Agreement is exempt from the federal securities laws.

## CONCLUSION

For the foregoing reasons, the Court denies Michael's motion for summary judgment [92].

Dated: May 5, 2021

_____
SARA L. ELLIS
United States District Judge